UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN JOHN McELLIGOT,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW SAUL, Commissioner of Social Security,[1]<br><br>Defendant. | No. 2:18-cv-2331 DB<br><br><br>ORDER |

This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment.[2] Plaintiff argues that the Administrative Law Judge's findings at step two and step five of the sequential evaluation, as well as the treatment of the lay witness evidence, constituted error.

////

---

[1] Andrew Saul became the Commissioner of the Social Security Administration on June 17, 2019. See https://www.ssa.gov/agency/commissioner.html (last visited by the court on July 30, 2019). Accordingly, Andrew Saul is substituted in as the defendant in this action. See 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

[2] Both parties have previously consented to Magistrate Judge jurisdiction in this action pursuant to 28 U.S.C. § 636(c). (See ECF Nos. 4 & 6.)

1

For the reasons explained below, plaintiff's motion is granted, the decision of the Commissioner of Social Security ("Commissioner") is reversed, and the matter is remanded for further proceedings consistent with this order.

**PROCEDURAL BACKGROUND**

On January 6, 2015, plaintiff filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"), alleging disability beginning on November 1, 2012. (Transcript ("Tr.") at 15, 248-49.) Plaintiff's application was denied initially, (id. at 124-28), and upon reconsideration. (Id. at 130-35.) Plaintiff requested an administrative hearing and hearings were held before an Administrative Law Judge ("ALJ") on February 27, 2017, and August 30, 2017. (Id. at 32-91.) Plaintiff was represented by an attorney and testified at the administrative hearing. (Id. at 33-35.)

In a decision issued on September 20, 2017, the ALJ found that plaintiff was not disabled. (Id. at 26.) The ALJ entered the following findings:

> 1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2015.
>
> 2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of November 1, 2012 through his date last insured of December 31, 2015 (20 CFR 404.1571 *et seq.*).
>
> 3. Through the date last insured, the claimant had the following severe impairments: right knee chondrocalcinosis with spurring, bilateral osteoarthritis and crystal deposition in bilateral knees, and degenerative changes of the right talonavicular joint with right foot osteoarthritis. (20 CFR 404.1520(c)).
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).
>
> 5. Through the date last insured, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except: he was unable to climb ladders, ropes, or scaffolds; and he was unable to crouch or kneel.
>
> 6. Through the date last insured, the claimant was capable of performing past relevant work as a web designer (20 CFR 404.1565).

> 7. The claimant was not under a disability, as defined in the Social Security Act, at any time from November 1, 2012, the alleged onset date, through December 31, 2015, the date last insured (20 CFR 404.1520(f)).

(Id. at 17-26.)

On June 22, 2018, the Appeals Council denied plaintiff's request for review of the ALJ's September 20, 2017 decision. (Id. at 1-3.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on August 24, 2018. (ECF No. 1.)

## LEGAL STANDARD

"The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)). If, however, "the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision, we must affirm." McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).

A five-step evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). The five-step process has been summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

Plaintiff's pending motion argues that the ALJ committed the following three principal errors: (1) the ALJ erred at step two of the sequential evaluation; (2) the ALJ's treatment of the subjective testimony constituted error; and (3) the ALJ erred at step five of the sequential evaluation.[3] (Pl.'s MSJ (ECF No. 17) at 19-44.[4])

**I.  Step Two Error**

At step two of the sequential evaluation, the ALJ must determine if the claimant has a medically severe impairment or combination of impairments. Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (citing Yuckert, 482 U.S. at 140-41). The Commissioner's regulations provide that "[a]n impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a) & 416.921(a). Basic work activities are "the abilities and aptitudes necessary to do most jobs," and those abilities and aptitudes include: (1) physical functions such as walking, standing, sitting, lifting, and carrying; (2) capacities for seeing, hearing, and speaking;

---

[3] The court has reordered and reorganized plaintiff's claims for purposes of clarity and efficiency.

[4] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

4

(3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b) & 416.921(b).

The Supreme Court has recognized that the Commissioner's "severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." Yuckert, 482 U.S. at 153. However, the regulation must not be used to prematurely disqualify a claimant. Id. at 158 (O'Connor, J., concurring). "An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual[']s ability to work." Smolen, 80 F.3d at 1290 (internal quotation marks and citation omitted).

"[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 85-28); see also Ukolov v. Barnhart, 420 F.3d 1002, 1006 (9th Cir. 2005) (claimant failed to satisfy step two burden where "none of the medical opinions included a finding of impairment, a diagnosis, or objective test results"). "Step two, then, is 'a de minimis screening device [used] to dispose of groundless claims[.]'" Webb, 433 F.3d at 687 (quoting Smolen, 80 F.3d at 1290); see also Edlund v. Massanari, 253 F.3d 1152, 1158-59 (9th Cir. 2001) (discussing this "de minimis standard"); Tomasek v. Astrue, No. C-06-07805 JCS, 2008 WL 361129, at *13 (N.D. Cal. Feb.11, 2008) (describing claimant's burden at step two as "low").

Here, the ALJ acknowledged that "primary care progress notes" showed that plaintiff had been prescribed medication for anxiety and bipolar disorder, that plaintiff had received treatment from Beautiful Minds Medical, and that a "comprehensive psychological evaluation" diagnosed plaintiff with generalized anxiety disorder, early onset dysthymic disorder, agoraphobic symptoms, and primary insomnia. (Tr. at 18.) Nonetheless, the ALJ found that plaintiff's psychiatric impairments did not constitute a severe impairment. (Id. at 18.)

5

In support of this finding the ALJ offered the following. That plaintiff's allegations were "not entirely consistent with treatment evidence," because a November 7, 2014 intake evaluation noted that playing the drums soothed plaintiff's thoughts and mind, and the evaluation was essentially unremarkable. (Id. at 19.) That those findings were consistent with further progress notes. (Id.) That on January 20, 2015, plaintiff "so improved . . . . that he was 'confronted that his degree can be used in many other employment arenas[.]'" (Id.) And that by April 1, 2015, plaintiff reported his functioning had "improved after he adjusted his medication dosage." (Id.)

The ALJ also supported this finding after considering "the opinion evidence in addition to the treatment evidence." (Id.) Specifically, the ALJ considered the opinions of examining physician Dr. Janet Bacheler, State agency reviewing physicians psychologist Paul Klein and psychiatrist L. Closky, and the opinion of testifying expert physician psychologist David Jarmon. (Id. at 19-20.) The ALJ elected to afford "little weight to Drs. Bacheler, Klein, and Colsky's opinions." (Id. at 20.) Conversely the ALJ afforded Dr. Jarmon's opinion "great weight." (Id.)

Even assuming, *arguendo*, that the ALJ's above analysis were free from error—and it is not—the ALJ's step two finding would still be erroneous. As noted above, the ALJ's conclusion that the claimant lacks a medically severe impairment or combination of impairments is valid only when that conclusion is "clearly established by medical evidence." Webb, 433 F.3d at 687. Here, the record is replete with objective evidence of plaintiff's diagnosis and treatment for impairments caused by psychiatric symptoms, putting aside the opinions offered by three physicians. (Tr. at 363, 365, 367-75, 387-91); see Ortiz v. Commissioner of Social Sec., 425 Fed. Appx. 653, 655 (9th Cir. 2011) ("This is not the total absence of objective evidence of severe medical impairment that would permit us to affirm a finding of no disability at step two."); Webb, 433 F.3d at 687 ("Although the medical record paints an incomplete picture of Webb's overall health during the relevant period, it includes evidence of problems sufficient to pass the de minimis threshold of step two."); Russell v. Colvin, 9 F.Supp.3d 1168, 1186-87 (D. Or. 2014) ("On review, the court must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that Ms. Russell did not have a medically severe impairment or combination of impairments."); cf. Ukolov, 420 F.3d at 1006 ("Because none of the medical

6

opinions included a finding of impairment, a diagnosis, or objective test results, Ukolov failed to meet his burden of establishing disability.").

Moreover, the ALJ's step two finding is based on the erroneous treatment of the medical opinion evidence. Defendant argues that the "only opinions of limitation based on a mental impairment were those of Drs. Bacheler, Klein, and Closky." (Def.'s MSJ (ECF No. 20) at 16.) This is true. An equally true statement, and one which more appropriately characterizes the evidence, would be that three physicians, Drs. Bacheler, Klein, and Closky, found limitations based on mental impairment while only one, Dr. Jarmon, found no severe mental impairment.

The weight to be given to medical opinions in Social Security disability cases depends in part on whether the opinions are proffered by treating, examining, or nonexamining health professionals. Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant . . . ." Lester, 81 F.3d at 830. This is so because a treating doctor is employed to cure and has a greater opportunity to know and observe the patient as an individual. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990).

The uncontradicted opinion of a treating or examining physician may be rejected only for clear and convincing reasons, while the opinion of a treating or examining physician that is controverted by another doctor may be rejected only for specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830-31. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." (Id. at 831.) Finally, although a treating physician's opinion is generally entitled to significant weight, "'[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'" Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (quoting Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009)).

////

Here, Dr. Bacheler examined plaintiff on March 25, 2015. (Tr. at 404.) Following a thorough examination Dr. Bacheler diagnosed plaintiff as suffering from generalized anxiety disorder, dysthymic disorder, early onset agoraphobic symptoms, and primary insomnia with a GAF score of 60.[5] (Id. at 407.) Dr. Bacheler opined that plaintiff's work-related abilities were mildly to moderately limited. (Id. at 408.) Moreover, Dr. Bacheler's opinion was consistent with, and supported by, the opinions of non-examining State Agency physicians Drs. Klein and Colsky, who opined that plaintiff had "severe psychiatric impairment that limits him to performing simple and detailed tasks involving superficial contact with coworkers, no public contact, and normal work-related changes in most routine work-like settings." (Id. at 20.)

The ALJ essentially rejected all three of these opinions in favor of Dr. Jarmon's opinion. (Id. at 19-20.) Dr. Jarmon, however, was also a non-examining physician who testified at the administrative hearing. The ALJ justified affording Dr. Jarmon's non-examining opinion more weight than Dr. Bacheler's examining opinion based on the finding that Dr. Bacheler's opinion "was made without the benefit of a review of any of claimant's treatment records other than a record dated 1/20/2015[.]" (Id. at 20.)

Dr. Bacheler's opinion states that "medical records from Beautiful Minds Medical (1/20/15) were reviewed." (Id. at 404.) It is unclear if this means only records dated 1/20/15 were available for review. However, even if so, that would mean Dr. Bacheler's opinion was based on an examination and a review of some medical records, while Dr. Jarmon's opinion was based solely on a review of medical records in the absence of an examination. And Drs. Klein and Closky's opinions were unquestionably based on a review of plaintiff's medical record.
////

---

[5] A GAF score represents a present rating of overall psychological functioning on a scale of 0 to 100. See Diagnostic and Statistical Manual of Disorders, at 34 (Am. Psychiatric Ass'n, 4th Ed. 2000) ("DSM-IV"); see also Keyser v. Commissioner Social Sec. Admin., 648 F.3d 721, 723 (9th Cir. 2011) ("A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment."). "GAF scores are typically assessed in controlled, clinical settings that may differ from work environments in important respects." Garrison v. Colvin, 759 F.3d 995, 1003 n.4 (9th Cir. 2014). "A GAF score between 51 to 60 describes 'moderate symptoms' or any moderate difficulty in social, occupational, or school functioning.'" Id.

1   Moreover, review of Dr. Jarmon's testimony finds that it was sparse, vague, and

2   conclusory, in contrast to the detail offered by the other three medical opinions. In this regard,

3   after giving a general overview of plaintiff's mental diagnosis, Dr. Jarmon testified simply that

4   "[t]here is not a consistent record of severe psychological problems in this case." (Id. at 82.) The

5   ALJ did not ask Dr. Jarmon to support this conclusion and asked no further questions.

6   Upon questioning from plaintiff's counsel, Dr. Jarmon conceded "there's lots of diagnosis

7   in this case," and that there were "indications in that Exhibit 3F that he's not doing well." (Id. at

8   84.) Dr. Jarmon went on to state, "Some of it seemed to be related to his work, when he was

9   doing work that he did not like it was stressful for him and he didn't do as well, but when [he]

10  stopped doing the work it seemed like he did better." (Id.) Dr. Jarmon acknowledged this was

11  common for someone with anxiety or mental health problems. (Id.)

12  Under these circumstances, the court cannot find that the ALJ's step two finding was

13  clearly established by medical evidence. Accordingly, the court finds that plaintiff is entitled to

14  summary judgment as to the claim that the ALJ erred at step two of the sequential evaluation.

15  **II.     Plaintiff's Subjective Testimony**

16  Plaintiff next challenges the ALJ's treatment of plaintiff's subjective testimony. (Pl.'s

17  MSJ (ECF No. 17) at 36-39.) The Ninth Circuit has summarized the ALJ's task with respect to

18  assessing a claimant's credibility as follows:

19  > To determine whether a claimant's testimony regarding subjective
20  > pain or symptoms is credible, an ALJ must engage in a two-step
21  > analysis. First, the ALJ must determine whether the claimant has
22  > presented objective medical evidence of an underlying impairment
23  > which could reasonably be expected to produce the pain or other
24  > symptoms alleged. The claimant, however, need not show that her
25  > impairment could reasonably be expected to cause the severity of the
26  > symptom she has alleged; she need only show that it could
27  > reasonably have caused some degree of the symptom. Thus, the ALJ
28  > may not reject subjective symptom testimony . . . simply because
    > there is no showing that the impairment can reasonably produce the
    > degree of symptom alleged.
    >
    > Second, if the claimant meets this first test, and there is no evidence
    > of malingering, the ALJ can reject the claimant's testimony about the
    > severity of her symptoms only by offering specific, clear and
    > convincing reasons for doing so[.]

28  Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks

omitted). "The clear and convincing standard is the most demanding required in Social Security cases." Moore v. Commissioner of Social Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking[.]" Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints."[6] Valentine v. Commissioner Social Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id.

Here, the ALJ addressed plaintiff's subjective testimony at step two and step four of the sequential evaluation. At step two the ALJ acknowledged that plaintiff alleged "he stopped working due to his anxiety and bipolar disorder." (Tr. at 18.) That plaintiff alleged trouble sleeping, confusion, and intense anxiety. (Id. at 18-19.) And that the symptoms were worse when around others. (Id.)

The ALJ found that these allegations were "not entirely consistent with the treatment evidence." (Id. at 19.) The ALJ reached this conclusion after noting that plaintiff "reported that

---

[6] In March 2016, Social Security Ruling ("SSR") 16-3p went into effect. "This ruling makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after the ALJ finds that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms,' and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness." Trevizo v. Berryhill, 871 F.3d 664, 679 (9th Cir. 2017) (quoting SSR 16-3p) (alterations omitted).

10

playing the drums soothes his thoughts and mind." (Id.) That during intake plaintiff "demonstrated no indicators of psychotic process" and displayed logical thinking, appropriate thought content, age-appropriate cognition, intact memory, and cooperative behavior. (Id.) The ALJ also noted that treatment records showed that plaintiff's "overall functioning improved[.]" (Id.)

None of these findings provide a clear or convincing reason for rejecting plaintiff's testimony. That playing the drums soothed plaintiff in no way detracts from plaintiff's testimony. Likewise, findings of logical thinking, intact memory, cooperative behavior, etc., are not inconsistent with allegations of anxiety, bipolar disorder, or insomnia. Moreover, that plaintiff "improved," after adjusting medication is not obviously inconsistent with plaintiff's allegations of continuing to experience symptoms.

It is important to be cognizant of the differences between psychiatric and physical impairments.

> Courts have recognized that a psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as is a medical impairment and that consequently, the diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine. In general, mental disorders cannot be ascertained and verified as are most physical illnesses, for the mind cannot be probed by mechanical devices in order to obtain objective clinical manifestations of mental illness . . . [W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnoses and observations of professionals trained in the field of psychopathology.

Averbach v. Astrue, 731 F.Supp.2d 977, 986 (C.D. Cal. 2010) (quoting Sanchez v. Apfel, 85 F.Supp.2d 986, 992 (C.D. Cal. 2000)).

Moreover, the Ninth Circuit has explained that:

> … it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.

Garrison v. Colvin, 759 F.3d 995, 1017 (9th Cir. 2014).

////

The ALJ also appears to have rejected plaintiff's testimony based on plaintiff's statement that

> he is able to perform personal care tasks, he is able to prepare his own meals, he does household chores, he goes out a few times a week, he is able to go out alone, he engaged in hobbies, and he is socially active with other musicians despite having problems managing money.

(Tr. at 21.)

However,

> [t]he critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons ... and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.

Bjornson v. Astrue, 671 F.3d 640, 647 (7th Cir. 2012). The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be utterly incapacitated in order to be disabled." Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001); see also Garrison, 759 F.3d at 1016 (citation omitted) ("[I]mpairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day.").

The ALJ also addressed plaintiff's testimony regarding physical impairments at step four of the sequential evaluation. There the ALJ noted that plaintiff alleged "intense pain," knee swelling, difficulty lifting, difficulty with postural activities and reaching, and the use of a cane. (Tr. at 22.) The ALJ found that these allegations were "not entirely consistent with the record." (Id. at 23.)

In support of this finding, the ALJ repeatedly cited a lack of objective evidence to support plaintiff's testimony. (Id. at 22-23.) But "after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity" of the symptoms.

Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005); see also Putz v. Astrue, 371 Fed. Appx. 801, 802-03 (9th Cir. 2010) ("Putz need not present objective medical evidence to demonstrate the severity of her fatigue."); Lingenfelter, 504 F.3d at 1036 ("the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged."); Bunnell v. Sullivan, 947 F.2d 341, 347 (9th Cir. 1991) ("If an adjudicator could reject a claim for disability simply because a claimant fails to produce medical evidence supporting the severity of the pain, there would be no reason for an adjudicator to consider anything other than medical findings.").

The ALJ also cited to a single medical record which reflected that plaintiff claimed to pick up 50-pound objects such as a drum set or a bag of concrete "on occasion." (Tr. at 22.) Certainly, this would support a finding by the ALJ that on occasion plaintiff could lift 50 pounds. But it cannot serve as a clear or convincing reason for rejecting the remainder of plaintiff's alleged physical and mental impairments.

For the reasons stated above, the court finds that the ALJ failed to offer specific, clear, and convincing reasons for rejecting plaintiff's testimony. Accordingly, plaintiff is also entitled to summary judgment on the claim that the ALJ's treatment of plaintiff's subjective testimony constituted error.

## CONCLUSION

The court has found that the ALJ committed, at least, two errors. After having found error, "'[t]he decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" Trevizo v. Berryhill, 871 F.3d 664, 682 (9th Cir. 2017) (quoting Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987)). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison, 759 F.3d at 1020.

Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); Treichler v. Commissioner of Social Sec. Admin., 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, the ALJ's errors occurred at step two of the sequential evaluation. If not for those errors, the findings through the remaining steps in the sequential evaluation may have been different. Under these circumstances the court cannot say that further administrative proceedings would serve no useful purpose.[7]

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 17) is granted;

2. Defendant's cross-motion for summary judgment (ECF No. 20) is denied;

3. The Commissioner's decision is reversed;

4. This matter is remanded for further proceedings consistent with the order; and

5. The Clerk of the Court shall enter judgment for plaintiff and close this case.

Dated: March 2, 2020

/s/ Deborah Barnes
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB\orders\orders.soc sec\mcelligot2331.ord

---

[7] Likewise, having already identified errors requiring remand, but not meeting the standard for remand for the immediate payment of benefits, the court finds it unnecessary to reach plaintiff's remaining claims. See Janovich v. Colvin, No. 2:13-cv-0096 DAD, 2014 WL 4370673, at *7 (E.D. Cal. Sept. 2, 2014) ("In light of the analysis and conclusions set forth above, the court need not address plaintiff's remaining claims of error."); Manning v. Colvin, No. CV 13-4853 DFM, 2014 WL 2002213, at *2 (C.D. Cal. May 15, 2014) ("Because the Court finds that the decision of the ALJ must be reversed on the basis of the stooping limitation, the Court need not address Plaintiff's remaining contentions.").

14